16-2016-CA-003590-XXXX-MA
CV-E

Filing # 42004026 E-Filed 05/26/2016 11:04:37 AM

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA

Case No.:
Division:

HENRY JEVON HART,

    Plaintiff,

vs.

UNIVERSAL HEALTH SERVICES, INC.,
PREMIER BEHAVIORAL SOLUTIONS, INC.,
WEKIVA SPRINGS CENTER, LLC,
BIH TAMBI, M.D.,
MOHAMMAD FAROOQUE, M.D.,
JOHN DOES 1-5, and
JANE DOES 1-5,

    Defendants.
_____/

## COMPLAINT

COMES NOW the Plaintiff, Henry Jevon Hart, by and through his undersigned counsel, files this Complaint and sues Defendants, UNIVERSAL HEALTH SERVICES, INC., PREMIER BEHAVIORAL SOLUTIONS, INC., WEKIVA SPRINGS CENTER, LLC, BIH TAMBI, M.D., MOHAMMAD FAROOQUE, M.D., JOHN DOES 1-5, and JANE DOES 1-5. In further support of this cause of action, Plaintiff would state and allege as follows:

### JURISDICTION AND VENUE

1.     This is an action for damages in excess of $15,000.00, exclusive of interests, costs, and attorney's fees.

2.     This is an action to recover damages on behalf of Henry Jevon Hart arising from the Defendants falsely imprisoning and depriving him of Constitutional and statutory rights in violation of 42 U.S.C. § 1983, and violation of the Florida Civil Remedies For Criminal Practices Act, Florida Statutes § 772.103, (hereinafter "FCRCPA").

3. The Court has jurisdiction over the subject of, and the parties to this action as the Defendants do or transact business in Duval County, Florida and the events giving rise to the claim arose in Duval County, Florida.

## PARTIES

4. Plaintiff Henry Jevon Hart ("Plaintiff") is a resident of Duval County, Florida and was a patient of Wekiva Springs Center, LLC ("Wekiva") from on or about April 24, 2015 until May 1, 2015.

5. Defendant Universal Health Services, Inc. ("UHS") is a Delaware corporation with its headquarters at 367 S. Gulph Road, King of Prussia, Pennsylvania 19406. UHS subsidiaries own and operate more than 235 acute care and behavioral health facilities and surgery centers in 37 states, the District of Columbia, Puerto Rico, the U.S. Virgin Islands and the United Kingdom.

6. Defendant Premier Behavioral Solutions, Inc. ("Premier") is a Delaware corporation with its headquarters at 367 S. Gulph Road, King of Prussia, Pennsylvania 19406.

7. Wekiva is a Delaware LLC and 80-bed acute behavioral health treatment facility located at 3947 Salisbury Road, Jacksonville, Duval County, Florida. Wekiva is a receiving facility designated by the Florida Department of Children and Families pursuant to Florida Statutes § 394.461 (2015).

8. Defendants Premier and Wekiva are subsidiaries of UHS, and affiliates of each other. Unless otherwise denoted, these three defendants shall be collectively referred to as "UHS Defendants."

9. Defendant Bih Tambi, M.D. (hereinafter "Tambi") was employed by or an agent of Defendant UHS in the capacity of a physician at Wekiva.

2

10.     Defendant Mohammad Farooque, M.D. (hereinafter "Farooque") was employed by or an agent of Defendant UHS in the capacity of a physician at Wekiva.

11.     Defendants John Doe 1-5 and Jane Doe 1-5 were employees or agents of Defendant UHS.

## FACTUAL ALLEGATIONS

12.     The Florida Mental Health Act, Florida Statutes §§ 394.451-394.47891 (2015). (hereinafter the "Baker Act") allows that a person may be involuntarily examined for up to 72 hours for persons who have a mental illness, are unable or unwilling to consent to voluntary examination, and, as a result of the mental illness, pose a risk of serious bodily harm to themselves or others in the near future.

13.     Florida Statutes § 394.463(2)(f) provides for an examination period of no more than 72 hours.

14.     Florida Statutes § 394.463(2)(i) states that:

Within the 72-hour examination period . . . one of the following actions must be taken, based on the individual needs of the patient:
  1. The patient shall be released, unless he or she is charged with a crime. . .;
  2. The patient shall be released, subject to the provisions of subparagraph 1., for voluntary outpatient treatment;
  3. The patient, unless he or she is charged with a crime, shall be asked to give express and informed consent to placement as a voluntary patient. . . ; or
  4. A petition for involuntary placement shall be filed in the circuit court when outpatient or inpatient treatment is deemed necessary.

15.     Universal Health Services, Inc. is one of the largest owners of mental health facilities in the United States.

3

16. With few exceptions, Defendant UHS restricts admissions to Wekiva to people who qualify for reimbursement of their medical costs from private insurance or a government funded healthcare program.

17. As part of the racketeering activity, the Defendants implemented a scheme of holding patients with healthcare coverage through private insurance or government funded healthcare programs, without medical justification or longer than medically necessary under the guise of the Baker Act. The Defendants implement a systematic census to determine when patients' benefits will expire.

18. As part of the racketeering activity, the Defendants maintain discharge lists of patients whose insurance have run out and encourages its behavioral health facilities to discharge these patients regardless of their condition.

19. As part of the racketeering activity, the Defendants discharge patients that they are illegally detaining under the guise of the Baker Act, when the patient obtains legal representation, all to avoid the scrutiny of Florida's state courts.

20. As part of the racketeering activity, the Defendants target patients that they believe cannot advocate for themselves, lack a familial support system that can advocate for them, or lack self-awareness and the propensity to scrutinize medical providers.

21. As part of the racketeering activity, the Defendants torment patients to obtain reactions intended to provide justification for Baker Act examination and involuntary placement.

22. As part of the racketeering activity, the Defendants falsify mental health records to manufacture justification for holding patients pursuant to the Baker Act.

23. As part of the racketeering activity, the Defendants mislead, intimidate, and/or threaten patients into signing a document "consenting" to voluntary placement.

4

24. On April 23, 2015, Plaintiff participated in a sleep study at the Malcom Randall VA Medical Center in Gainesville, Florida. On April 24, 2015, while returning to Jacksonville from Gainesville, Plaintiff was run off the road by an 18-wheel tractor trailer. Plaintiff had temporary feelings of road rage in response to the tractor trailer driver's careless driving as he watched the truck proceed down the highway without stopping. Plaintiff proceeded to attend an Intensive Outpatient Program at Wekiva that evening.

25. While at the Intensive Outpatient Program, Plaintiff was made to fill out a questionnaire in which one of the questions asked "Have you thought about harming others in the last 24 hours?" Plaintiff answered affirmatively and explained to Wekiva personnel what had happened on the way back from Gainesville and that he was not a threat to himself or others.

26. Nonetheless, at about 6:30p.m. on April 24, 2015, Plaintiff was taken into custody by Wekiva personnel and confined against his will for the purposes of involuntary examination pursuant to the Baker Act because personnel claim that Plaintiff made suicidal ideations.

27. As part of the racketeering activity, Defendants unlawfully involuntarily confined Plaintiff for the purposes of making and submitting a false or fraudulent claim(s) to Plaintiff's insurer for reimbursement of medically unnecessary services.

28. At the time Plaintiff arrived at Wekiva, he did not meet the criteria for involuntary placement pursuant to the Baker Act. While involuntarily confined at Wekiva, Plaintiff was under the care and treatment of Defendants Tambi and Farooque. Defendant Tambi's "examination" of Plaintiff on April 25, 2015 lasted for 5-7 minutes. Defendant Farooque's "examination" of Plaintiff on April 26, 2015 lasted for 5-7 minutes. Plaintiff was not, during the time of his involuntary confinement, dangerous to himself or others and the Defendants had no basis upon which to continue Plaintiff's involuntary confinement in Wekiva. Plaintiff had not

5

been charged with a crime at any time during his involuntary confinement. Following an initial examination, Plaintiff should have been released.

29. Through their employment by the UHS Defendants, Defendant Tambi, Defendant Farooque, Defendants John Doe 1-5, and Defendants Jane Doe 1-5 were acting under color of state law, to wit the Baker Act, by involuntarily confining Plaintiff in Wekiva, a designated Baker Act receiving facility.

30. On April 27, 2015, Ashley Harrold, an employee of Wekiva filed a Petition For Involuntary Placement of Plaintiff in Duval County Circuit Court case number 16-2015-MH-000602-XXXX-MA. On April 30, 2015, Plaintiff filed a Petition For Writ of Habeas Corpus in the same case.

31. At the May 1, 2015 hearing on the Petition For Involuntary Placement before the magistrate, Defendants Tambi and Farooque failed to appear. Wekiva's director and a counselor testified on behalf of Wekiva.

32. Plaintiff was involuntarily confined until 8:00p.m. on May 1, 2015, at which time he was discharged.

33. All conditions precedent to this action have occurred or have been waived.

## COUNT I

### FALSE IMPRISONMENT

34. Plaintiff realleges those allegations contained within paragraphs 1-33 above and incorporates them herein by this reference.

35. Defendants intentionally caused Plaintiff to be restrained against his will.

36. Defendants acted without legal authority in restraining Plaintiff against his will because Plaintiff did not meet the criteria for involuntary examination under the Baker Act.

37. Defendants acted without legal authority in restraining Plaintiff against his will because Plaintiff did not meet the criteria for involuntary placement under the Baker Act.

38. Plaintiff's restraint was unreasonable and unwarranted under the circumstances.

39. Plaintiff suffered mental anguish, humiliation, and loss of income, due to his false imprisonment.

40. Plaintiff reserves the right to move for leave to amend Count I to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Henry Jevon Hart prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish, humiliation, loss of income; and

(c) granting such other relief as the Court may deem just and proper.

## COUNT II

## DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

41. Plaintiff realleges those allegations contained within paragraphs 1-33 and 35-39 above and incorporates them herein by this reference.

42. 42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

43. Plaintiff had a clearly established right to liberty, to be free from unreasonable searches and seizures, and to due process.

7

44. Defendants deprived Plaintiff of his Constitutional rights to liberty, to be free from unreasonable searches and seizures, and right to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

45. Plaintiff was not, during the time of his involuntary confinement, dangerous to himself or others and Defendants had no legal basis upon which to continue Plaintiff's involuntary confinement.

46. Plaintiff had not been charged with a crime at the time of his involuntary confinement, nor at any time during his involuntary confinement.

47. Following his initial examination, Plaintiff should have been released pursuant to Florida Statutes § 392.463(2)(i)(1) because he did not meet the clinical requirements for involuntary confinement.

48. Plaintiff suffered mental anguish, humiliation, and loss of income due to his deprivation of liberty and due process under the law.

49. Plaintiff reserves the right to move for leave to amend Count II to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Henry Jevon Hart prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish, humiliation, loss of income;

(c) awarding punitive damages in the event this action is removed to a district court of the United States;

(d) awarding litigation costs and reasonable attorney's fees pursuant to 42. U.S.C. §1981; and

(e) granting such other relief as the Court may deem just and proper.

## COUNT III

### VIOLATION OF THE FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT, SECTION 772.103, FLORIDA STATUTES

50. Plaintiff realleges those allegations contained within paragraphs 1-33, and 35-39 above and incorporates them herein by this reference.

51. As part of the racketeering activity, Defendants with criminal intent held Plaintiff illegally and for the purposes of committing fraud upon Plaintiff and his insurance provider.

52. As part of the racketeering activity, Defendants with criminal intent participated in the scheme to defraud insurance providers of payments that they were not entitled to, and provided material support to the UHS Defendants so that they would receive money for personal use and to fraudulently maximize stockholder equity.

53. As part of the racketeering activity, Defendants with criminal intent in violation of Florida Statute 812.014, Florida Statute 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, received proceeds derived, directly and indirectly, from their ongoing scheme to defraud insurance providers of reimbursements, both directly and indirectly, and any part of such proceeds, or the proceeds derived from the investment or use thereof, were used in the establishment or operation of the UHS Defendants' enterprise, all in violation of Florida Statute 772.103(1).

54. As part of the racketeering activity, Defendants with criminal intent in violation of Florida Statute 812.014, Florida Statute 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, through their ongoing scheme to defraud insurance providers of reimbursements, acquired or maintained, directly or indirectly, an interest in or control of the UHS Defendants' enterprise, all in violation of Florida Statute 772.103(2).

55. As part of the racketeering activity, Defendants with criminal intent in violation of Florida Statute 812.014, Florida Statute 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, maintained employment by, or associated with, the UHS Defendants to conduct or participate, directly or indirectly, in the UHS Defendants' ongoing scheme to defraud insurance providers of reimbursements, all in violation of Florida Statute 772.103(3).

56. As part of the racketeering activity, Defendants with criminal intent in violation of Florida Statute 812.014, Florida Statute 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, conspired or endeavored to violate Florida Statute 772.103(1)-(3) as alleged above, all in violation of Florida Statute 772.103(4).

57. Plaintiff suffered mental anguish, humiliation, and loss of income due to his deprivation of liberty, search and seizure, and deprivation of due process under the law while Defendants were violating the Florida Civil Remedies For Criminal Practices Act.

58. Plaintiff reserves the right to move for leave to amend Count III to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Henry Jevon Hart prays for judgment:

(a) awarding treble damages, litigation costs, and reasonable attorney's fees pursuant to Florida Statute 772.104(1); and

(b) granting such other relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

**THOELE DRACH**

BY: _____

Justin Seth Drach, Esq.
Florida Bar No. 103016
Email: justindrach@drachlaw.com
Amanda Marie Thoele, Esq.
Florida Bar No. 75118
Email: amandathoele@drachlaw.com
Justin Seth Drach, P.A.
5262 Commissioners Drive
Jacksonville, FL 32224
Telephone: (904) 600-4384
Facsimile: (904) 306-1355
*Attorneys for Plaintiff*

11