**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
JACKSONVILLE DIVISION

CASE NO.: 3:16-CV-879

HENRY JEVON HART,

      Plaintiff,

vs.

UNIVERSAL HEALTH SERVICES, INC.,
PREMIER BEHAVIORAL SOLUTIONS, INC.
WEKIVA SPRINGS CENTER, LLC.,
BIH TAMBI, M.D., MORAMMAD FAROOQUE,
M.D., JOHN DOES 1-5, and JANE DOES 1-5,

      Defendants.

_____/

### DEFENDANTS', UNIVERSAL HEALTH SERVICES, INC., PREMIER BEHAVIORAL HEALTH SOLUTIONS, INC., AND WEKIVA SPRINGS CENTER, LLC, MOTION TO DISMISS THE COMPLAINT AND/OR MOTION TO STRIKE

Defendants, UNIVERSAL HEALTH SERVICES, INC. ("UHS"), PREMIER BEHAVIORAL SOLUTIONS, INC. ("PREMIER"), and WEKIVA SPRINGS CENTER, LLC ("WEKIVA SPRINGS") by and through undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.140, move this Court for entry of an Order Dismissing Plaintiff's Complaint, and/or an Order Striking the Prayer for Punitive Damages and Attorney's Fees, and as grounds in support thereof state as follows:

1. Plaintiff has brought a Complaint against PREMIER, UHS, a holding company, and WEKIVA SPRINGS, as well as two physician-Defendants, Dr. Bih Tambi and Dr. Mohammad Farooque, alleging False Imprisonment (Count I), Deprivation of Civil Rights 42 *U.S.C.* § 1983 (Count II), and Violation of Florida Civil Remedies for Criminal Practices Act Section 722.103, Florida Statutes (Count III). All three counts of the Complaint are brought

against all Defendants, cumulatively.   All three counts are based on alleged violations of the Florida Baker Act.

2.     Plaintiff asserts in the factual allegations that while participating in an Intensive Outpatient Program at WEKIVA in relation to road rage, he affirmatively answered a questionnaire when asked "have you thought about harming others in the last 24 hours." *Paragraph 24 of the Complaint*. As a result, Mr. Hart was Baker Acted and an involuntary examination was performed pursuant to the Florida Statute §394.463 See Paragraphs 14, 24-26 of the Complaint, attached hereto as **Exhibit "A."**

3.     Plaintiff goes on to allege that he came under the care and treatment of Dr. Tambi and Dr. Farooque and that both physicians improperly performed examinations of Mr. Hart, lasting only 5-7 minutes. Plaintiff alleges that both physicians improperly assessed and diagnosed Mr. Hart as being a threat to himself and others. *See Paragraph 28 of the Complaint*.

4.     Plaintiff's Complaint is devoid of any factual allegations that the *procedures* of the Florida Baker Act were not followed by the Defendants to this action. Instead, Plaintiff's allegations sound in medical negligence. Plaintiff's entire Complaint rests on the alleged basis that he should not have been kept at WEKIVA SPRINGS because the physicians' examinations should have lasted longer than 5-7 minutes and should have revealed that Plaintiff was not a threat to himself or others.  Clearly, the underlying issues in this case are based on the prevailing medical standard of care in order to determine if a proper exam was performed and a proper diagnosis made. As such, for the reasons stated more specifically below, the Complaint should be dismissed for Plaintiff's failure to comply with the medical malpractice presuit requirements of Florida Chapter 766.

5.      Furthermore, the majority of Plaintiff's remaining allegations, that the Defendants were engaged in alleged "racketeering activity," are general and conclusory statements, including generally described practices of confining patients in order to make fraudulent insurance claims. According to Plaintiff, this so-called "racketeering activity" allegedly constituted violations by every named Defendant of multiple Federal and Florida statutes in violation of Florida's RICO Act.

6.      These allegations of racketeering are not supported by any specific facts and Plaintiff fails to identify with any sufficient particularity which specific actions were taken in violation of the numerous statutes Plaintiffs cites to, dates of the alleged violations, the actors involved, etc. There are no allegations which indicate in any way how the numerous statutes Plaintiff relies on were violated and Plaintiff's allegations amount to nothing more than conclusory and unsubstantiated claims. As such, for the reasons stated more specifically below, Count III of the Complaint should be dismissed for failure to state a claim pursuant to Florida RICO Act.

7.      Furthermore, Plaintiff attempts to bring a civil rights claim pursuant to 42 *U.S.C.* § 1983 by asserting that Plaintiff's civil rights were infringed upon when he was "improperly" examined and kept at the facility under the Florida Baker Act. However, Plaintiff fails to properly allege that the Defendants were *state actors* and that a *federal*, rather than a state right, was violated pursuant to this federal statute. As such, for the reasons stated more specifically below, Count II of the Complaint should be dismissed for failure to state a claim pursuant to 42 *U.S.C.* § 1983.

8.      Plaintiff has also failed to properly bring a claim against UHS, a holding company, and PREMIER by failing to allege any proper legal reasons as to why these entities

should be liable for actions that allegedly occurred at WEKIVA SPRINGS. As such, for the reasons stated more specifically below, UHS and PREMIER should be dismissed from the Complaint.

9.      Furthermore, Plaintiff attempts to hold WEKIVA SPRINGS, UHS and PREMIER vicariously liable for the alleged torts and statutory violations of Dr. Tambi and Dr. Farooque, but completely fails to allege any specific facts or allegations necessary to support an  imposition of vicarious liability on to these entities. *See Paragraphs 9 and 10 of the Complaint.*  As such, for the reasons stated more specifically below, Plaintiff's allegations regarding vicarious liability should be dismissed from the Complaint.

10.     Lastly, Plaintiff has improperly requested in the prayers for relief attorney's fees in Count II and punitive damages in Count III. As such, for the reasons stated more specifically below, these prayers for relief should be stricken from the Complaint.

11.     Plaintiff has agreed to allow all the Defendants represented by the below counsel to extend the time to respond to the Complaint once all of Defendants had been served. See the attached correspondence, attached hereto as **Exhibit "B."**

WHEREFORE, in light of the above and forgoing, Defendants, UHS, PREMIER and WEKIVA SPRINGS, respectfully request this Court enter an Order Granting this Motion to Dismiss and Motion to Strike.

## MEMORANDUM OF LAW

### Motion to Dismiss Standard - Failure to State A Claim

To survive a motion to dismiss for failure to state a claim under the Federal Rules of Civil Procedure, the complaint must (1) must describe the claim *in sufficient detail* to give the defendant fair notice of what the claim is and the grounds on which it rests; and (2) its

allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir.2008) (emphasis added). "Plausibility" in this context does not imply that a court should decide whose version to believe, or which version is more likely than not. Rather, to survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must give ***enough details*** about the subject-matter of the case to present a story that holds together." *Id.* (emphasis added). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *Id.* Plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

## **Law and Argument**

### I.   **Dismissal of Universal Health Services as the Parent Corporation**

Plaintiffs have named UHS as a party defendant to this action by virtue of its ownership interest in PREMIER and WEKIVA SPRINGS as the "parent" corporation of these entities. Specifically, Plaintiff's only allegations regarding the relationship between UHS and these entities are confined to Paragraph 9 of the Complaint. Plaintiff alleges:

> 8. Defendants Premier and Wekiva are subsidiaries of UHS, and affiliates of each other. Unless otherwise denoted, these three defendants shall be collectively reffered to as "UHS Defendants."

There are no separate counts against UHS that haven't been comingled with the allegations against PREMIER and WEKIVA SPRINGS. Florida law is clear that the *mere relationship between a parent corporation and its subsidiary* is not sufficient to subject a non-Florida parent corporation to long-arm jurisdiction within this state. *Gadea v. Star Cruises, Ltd.*,

949 So.2d 1143 (Fla. 3d DCA 2007)(emphasis added). A parent corporation is not liable for torts committed by its subsidiary and cannot exercise the rights of its subsidiary. *See Am. Int'l Grp., Inc. v. Cornerstone Businesses, Inc.*, 872 So.2d 333, 336 (Fla. 2d DCA 2004). "It is only where a parent corporation exerts such extensive operational control over a subsidiary that the subsidiary is no more than an agent existing to serve only the parent's needs, that jurisdiction over the parent exists." *Id.* As held by the Court in *Gadea*, sharing some officers and directors, having a unified or 'global' strategy and goals, cross-selling in promotional materials, and performing services for one another is not sufficient to satisfy general jurisdiction over a parent corporation. *Id.* The amount of control exercised by the parent must be high and very significant. See *State v. American Tobacco Co.*, 707 So. 2d 851 (Fla. 4th DCA 1998).

The Court in *Gadea* relied on the analysis of the Ninth Judicial Circuit in *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175 (9th Cir.) when it decided that it had no jurisdiction over the parent corporation due to lack of control over its subsidiary:

> The instant case is analogous to *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175 (9th Cir.) *cert. denied*, 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980). In *Kramer Motors,* the court found that there was insufficient control by the parent over the subsidiary despite: 1) some of the directors of the parent were members of the board of the subsidiary; 2) the president of the subsidiary served as a director of the parent; 3) the parent had a general executive responsibility for the subsidiary's operation and reviewed and approved the major policy decisions of the subsidiary; 4) the parent guaranteed obligations of the subsidiary to United States banks; 5) executives of the parent worked closely with executives of the subsidiary on pricing and products and sometimes traveled to the United States for meetings; 6) the parent approved the subsidiary's proposal to consolidate product distribution; and 7) the parent established goals and gave directives to the subsidiary. *Id.* at 1177. Despite the amount of involvement in *Kramer Motors* of the parent over the subsidiary, the court found that such contact was insufficient to establish an agency because no evidence was shown that the parent controlled the internal day-to-day affairs of the subsidiary. All goals and

directives of the parent were "normal" and did not show "operational control" of the subsidiary by the parent necessary to establish personal jurisdiction. *See also General Cigar Holdings, Inc. v. Altadis, S.A.,* 205 F.Supp.2d 1335 (S.D.Fla.), *aff'd,* 54 Fed.Appx. 492 (11th Cir.2002), (finding no personal jurisdiction over a parent with a Florida subsidiary where despite "regular and extensive contact" and a "very close working relationship" between the parent and the subsidiary, there was no evidence that the parent controlled the subsidiary's daily "basic operation").

*Gadea*, 949 So. 2d at 1147.

Additionally, a parent corporation will not be held liable for the actions of its subsidiary unless the subsidiary is deemed to be a mere instrumentality of the parent. *Unijax Inc. v. Factory Insurance Association,* 328 So.2d 448 (Fla. 1st DCA 1976). For a subsidiary to be considered a mere instrumentality of a parent corporation, there must be: (1) control of the parent over the subsidiary "to the degree that it is a mere instrumentality." (2) parent committed fraud or wrongdoing through its subsidiary. (3) unjust loss or injury to a claimant, such as when the subsidiary is insolvent. A mere instrumentality finding is rare. See *Am. Int'l Grp., Inc. v. Cornerstone Businesses, Inc.*, 872 So. 2d 333, 337 (Fla. 2nd DCA 2004).

As held by the Supreme Court of the United States:

It is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries. Douglas & Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193 (1929) (hereinafter Douglas); see also, e.g., Buechner v. Farbenfabriken Bayer Aktiengesellschaft, 38 Del.Ch. 490, 494, 154 A.2d 684, 687 (1959); Berkey v. Third Ave. R. Co., 244 N.Y. 84, 85, 155 N.E. 58 (1926) (Cardozo, J.); 1 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 33, p. 568 (rev. ed. 1990) ("Neither does the mere fact that there exists a parent-subsidiary relationship between two corporations make the one liable for the torts of its affiliate"); Horton, *Liability of Corporation for Torts of Subsidiary*, 7 A.L.R.3d 1343, 1349 (1966) ("Ordinarily, a corporation which chooses to facilitate the operation of its business by employment of another corporation as

7

a subsidiary will not be penalized by a judicial determination of liability for the legal obligations of the subsidiary"); cf. <u>Anderson v. Abbott</u>, 321 U.S. 349, 362, 64 S.Ct. 531, 537, 88 L.Ed. 793 (1944) ("Limited liability is the rule, not the exception"); <u>Burnet v. Clark</u>, 287 U.S. 410, 415, 53 S.Ct. 207, 208, 77 L.Ed. 397 (1932) ("A corporation and its stockholders are generally to be treated as separate entities"). Thus it is hornbook law that "the exercise of the 'control' which stock ownership gives to the stockholders ... will not create liability beyond the assets of the subsidiary.

*United States v. Bestfoods,* 524 U.S. 51, 61-62 (1998).

Plaintiff attempts to allege in a purely conclusory manner that UHS is vicariously liable for the acts and omissions that allegedly occurred at WEKIVA SPRINGS and by employees or agents of this facility. However, that is simply not what Florida law provides when parent corporations are involved.

As with many principles in law, there is an exception for when a stockholder, director or officer may be held personally liable for corporate acts. That exception is when the corporate veil is pierced. However, this exception does not apply to this action or has not even been pleaded as existing to allow liability to flow to any other entity other than the corporation.

Directors, officers, and stockholders may be held personally liable for corporate acts where the corporate veil has been pierced. This exception was explained at length in *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349-50 (11th Cir. 2011).

It is black letter law in Florida that to disregard this corporate fiction and hold the corporation's owners liable—to "pierce the corporate veil"—the plaintiff must prove that:

(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;

(2) the corporate form must have been used fraudulently or for an improper purpose; and

(3) the fraudulent or improper use of the corporate form caused injury to the claimant.

Gasparini v. Pordomingo, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008) (emphasis added) (citations omitted); see also 8A Fla. Jur.2d Business Relationships § 13 (2008). "*Shareholders" include individuals who own stock*, see, e.g., McCormack v. Ribbeck, 702 So.2d 271, 271–72 (Fla. 1st DCA 1997), *and parent companies who own their subsidiaries*, see, e.g., 17315 Collins Ave., LLC v. Fortune Dev. Sales Corp., 34 So.3d 166, 168 (Fla. 3d DCA 2010).

The theme of ownership underlies Florida's leading case on piercing the corporate veil, Dania Jai–Alai Palace, Inc., v. Sykes, 450 So.2d 1114 (Fla. 1984). In Sykes, the plaintiff sued a parent company and its two subsidiaries. Although only one of the subsidiaries committed the tort in question, the plaintiff alleged that the subsidiaries operated as one entity and that these subsidiaries were the "mere instrumentalities" of the parent, which should be liable for the subsidiary's actions. Id. at 1116. The trial court accepted this argument and the district court of appeal affirmed, holding that the plaintiff need not prove any fraud or wrongdoing on the part of the parent corporation, the subsidiaries' owner. Id.

The Florida Supreme Court rejected this understanding, and in doing so, based the rationale for piercing the veil on shareholder liability. *The court explained that shareholders incorporate to limit their liability, creating a separate entity that is "apart from its stockholders."* Id. at 1118*1350 (quoting Riesen v. Md. Cas. Co., 153 Fla. 205, 14 So.2d 197, 199 (1943)). Correspondingly, *courts will not ignore this separate entity so long as the stockholders make "proper use" of this fiction; they must not use limited liability to defraud creditors*. Id. (citing Riesen, 14 So.2d at 199; Barnes v. Liebig, 146 Fla. 219, 1 So.2d 247, 253–54 (1941)). It is when shareholders "improperly disregard[ ] the corporate identities" that litigants may peel back the veil of limited liability and hold the corporation's owners responsible for its debts. Id.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349-50 (11th Cir. 2011)(emphasis added).

For UHS to be liable for its alleged subsidiaries' acts under agency theories, it must exercise control to the extent the subsidiary "manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Vantage View, Inc. v.*

*Bali East Development Corp.*, 421 S. 2d 728 (Fla. 4th DCA 1982), *modified on other grounds by Dania Jai-Alai Palace v. Sykes*, 450 So. 2d 1114 (Fla. 1984). There are no allegations contained within the Complaint other than naked assertions of. There are no allegations that PREMIER, and WEKIVA manifest "no corporate interests of their" own and functions "solely" to achieve the purposes of UHS. The reality is, UHS does not maintain control of the everyday operations of these entities. For these reasons, Plaintiff has failed to state a cognizable cause of action against UHS. Therefore, UHS should be dismissed from the Complaint.

## II.      Dismissal of Premier for Failure to State a Claim

Plaintiff's allegations in the Complaint involve Ms. Hart's Baker Act to WEKIVA SPRINGS in April of 2015 and the alleged violations that occurred at this facility. As it relates to the entity PREMIER, Plaintiff alleges that PREMIER is somehow liable for the alleged violations that occurred at WEKIVA SPRINGS simply because they are both "subsidiaries of Universal Health Services, Inc., and affiliates of each other." *See Paragraph 8 of the Complaint*. There are no separate allegations or claims made against PREMIER and Plaintiff has failed to allege a legal relationship between WEKIVA SPRINGS and PREMIER as to hold PREMIER liable for the alleged violations contained in Plaintiff's Complaint. Therefore, Defendant, PREMIER, should be dismissed from the Complaint.

## III.     Allegations of Vicarious Liability against UHS, PREMIER and WEKIVA SPRINGS Should be Dismissed for Failure to Properly Allege Liability Based on the Alleged Torts and Statutory Violations of Dr. Tambi and Dr. Farooque

In Paragraphs 9 and 10 of the Complaint, Plaintiff attempts to hold WEKIVA as well as UHS and PREMIER liable for the alleged violations and failures of the defendant/physicians. Specifically, Plaintiff concludes Dr. Tambi and Dr. Farooque were the physician/employees or

agents of UHS at WEKIVA. However, the Complaint is devoid of any factual allegations whatsoever supporting these conclusory statements.

In Florida, an actual agency or employment relationship requires "acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Goldschmidt v. Holman*, 571 So. 2d 422, 426 (Fla. 1990).  To establish apparent agency, there must be" "(1) a representation by the principal; (2) reliance on that representation by a third person; and (3) a change of position by the third person in reliance upon such representation to his detriment." *Orlando Executive Park, Inc. v. Robbins*, 433 So. 2d 491, 494 (Fla. 1983).

The Complaint is devoid of <u>any</u> factual allegations at all to support such vicarious liability on the grounds of actual, apparent, or ostensible agency.  To survive a motion to dismiss for failure to state a claim under the Federal Rules of Civil Procedure, the complaint must (1) must describe the claim ***in sufficient detail*** to give the defendant fair notice of what the claim is and the grounds on which it rests; and (2) its allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir.2008) (emphasis added).  "Plausibility" in this context does not imply that a court should decide whose version to believe, or which version is more likely than not. Rather, to survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must give ***enough details*** about the subject-matter of the case to present a story that holds together." *Id.* (emphasis added). Plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Goggin v. Higgins*, 8:13-CV-2068-T-24, 2013 WL 6244536, at *1 (M.D. Fla. 2013). The standard on a 12(b)(6) motion is not whether

the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *Id.*

For these reasons, Plaintiff has failed to state a proper claim against the Defendants based on vicarious liability.

**IV.** **Count I Should be Dismissed for Plaintiff's Failure to State a Claim for False Imprisonment Based on Violations of the Florida Baker Act**

In Count I of the Complaint, Plaintiff apparently attempts to bring a claim against all of the Defendants for the tort of false imprisonment based on violations of the Florida Baker Act. False imprisonment is defined as an *unlawful restraint* of a person against his or her will, and the gist of action is unlawful detention of person and deprivation of his or her liberty. *Spears v. Albertson's, Inc.,* 848 So. 2d 1176 (Fla. 1st DCA 2003)(emphasis added). According to the very factual allegations contained in the Complaint, Plaintiff has failed to allege that WEKIVA was in violation of the Florida Baker Act laws.

Instead, Plaintiff alleges that she was brought in to WEKIVA involuntarily on the evening of April 24, 2016. On April 25, 2015, she was examined by Dr. Tambi, a psychiatrist. The following day, she was again examined by Dr. Farooque, another psychiatrist. The following day, on April 27th, a Petition for Involuntary Placement was filed. *See Paragraphs 26-30 of the Complaint.*

According to Fla. Stat. §394.463(2)(g), once brought to the facility, the patient must be examined within 72 hours. As alleged by the Plaintiff, an initial exam was performed by a psychiatrist, Dr. Tambi within the required 72 hour time period. Furthermore, as alleged by Plaintiff, a second opinion was obtained and a petition for Involuntary Inpatient was filed in Duval County. Fla. Stat. §394.463(2)(i) states, in pertinent part:

"Within the 72-hour examination period or, if the 72 hours ends on a weekend or holiday, no later than the next working day thereafter, one of the following actions must be taken, based on the individual needs of the patient:

1. The patient shall be released, unless he or she is charged with a crime, in which case the patient shall be returned to the custody of a law enforcement officer; 2. The patient shall be released, subject to the provisions of subparagraph 1., for voluntary outpatient treatment; 3. The patient, unless he or she is charged with a crime, shall be asked to give express and informed consent to placement as a voluntary patient, and, if such consent is given, the patient shall be admitted as a voluntary patient; or 4. **A petition for involuntary placement shall be filed in the circuit court when outpatient or inpatient treatment is deemed necessary.** When inpatient treatment is deemed necessary, the least restrictive treatment consistent with the optimum improvement of the patient's condition shall be made available. When a petition is to be filed for involuntary outpatient placement, it shall be filed by one of the petitioners specified in s. 394.4655(3)(a). A petition for involuntary inpatient placement shall be filed by the facility administrator.

(emphasis added).

The only factual "violations" as alleged in the Complaint deal with the apparent failure by the physician/defendants in the *medical examination* of the patient. In fact, Plaintiff makes no allegations whatsoever that the Baker Act was violated *procedurally*, and instead, was violated because he was kept despite the fact that he should not have been diagnosed as being a threat of harm to himself or others. Clearly, in order for Plaintiff to establish that he was not a threat to himself or others or that the examinations by the physicians were improper, Plaintiff would need to rely on the medical standard of care. For the reasons outlined in detail below, Plaintiff has failed to comply with the presuit requirements of Florida Chapter 766.

Thus, Plaintiff has failed to state a claim for false imprisonment pursuant to violations of the Florida Baker Act and Count I should properly be dismissed.

**V.    Plaintiff's Complaint Must be Dismissed for Failure to Comply with the Florida Medical Malpractice Presuit Requirements**

**A.  Claim for False Imprisonment Arising out of Baker Act Violations**

13

As stated above, the allegations contained in the Complaint sound in medical negligence and Plaintiff has failed to comply with the medical malpractice statutory presuit screening procedures outlined in Fla. Stats. §766.106 and §766.203. Therefore, Plaintiff's Complaint should be dismissed.

Fla. Stat. §766.106(1)(a) defines a claim for medical malpractice as "a claim, arising out of the rendering of, or the failure to render, medical care or services." The question in determining if a claim is a medical malpractice claim is whether the plaintiff must rely upon the medical negligence standard of care in order to prove the case. *Tenet S. Florida Health Sys. v. Jackson*, 991 So. 2d 396, 399 (Fla. 3d DCA 2008)(citing to *Integrated Health Care Servs., Inc. v. Lang-Redway,* 840 So.2d 974, 980 (Fla.2002)). Furthermore, in order for the presuit requirements to apply, the defendant must be a healthcare provider as defined in Fla. Stat. 766.202(4), or in the alternative, the defendant must be alleged to be vicariously liable for the actions of a healthcare provider. See *Weinstock v. Groth*, 629 So. 2d 835, 837-38 (Fla. 1993).

In the case *Blom v. Adventist Health System/Sunbelt, Inc*., 911 So. 2d 211 ( Fla. 5th DCA 2005), the court upheld a trial court's dismissal of a complaint involving allegations of false imprisonment arising out of a Baker Act detention because the Plaintiff failed to comply with the Florida medical malpractice presuit requirements. In *Blom*, the plaintiff alleged that an emergency room physician involuntarily committed plaintiff without following the proper procedures set forth in Chapter 394, the Florida Baker Act. She was allegedly kept against her will at the hospital for three days and was mistreated in a variety of ways by the hospital employees. *Id.* at 212-213.

In up-holding the trial court's decision to dismiss the complaint for failure to comply with the medical malpractice presuit screening requirements, the court acknowledged that the trial

14

court is initially tasked with the responsibility of determining whether the claim arises out of the rendering or failure to render medical care or services. Whether a person is required to comply with the presuit requirements is fundamentally fact dependent. *Id*. at 213-14.

The court also acknowledged that on a prior occasion, in the case *Foshee Everett v. Florida Inst. of Tech*. 503 So. 2d 1382 (Fla. 5th DCA 1987), the Fifth District *did* find that a claim for false imprisonment arising out of a Baker Act detention failed to meet the definition of medical negligence. However, the court reasoned that *Foshee* was factually distinguishable, which was an "important consideration where the result is fact dependent." *Id.* 214- 215. The court pointed out that in *Foshee*, the patient was *physically* prevented from leaving the facility when she attempted to leave after she refused to sign in voluntarily *and no doctor had examined her for the two days she was kept at the facility*. *Id.* The court went on to state that in contrast, the complaint in *Blom,* "essentially asserts that the physician was wrong in initiating the detention in connection with his responsibilities under the Baker Act. That is to say, **the physician was wrong in his diagnosis.** Thus, the allegations of the complaint arise out of the rendition of medical care by licensed health care providers and are subject to the professional standards of care described in Chapter 766." *Id.* at 215. *(emphasis added)*.

The allegations as alleged are factually akin to the fact in *Blom* and Plaintiff must comply with the presuit requirements of Chapter 766 in order to bring a claim against the Defendants, and as such, Plaintiff's Complaint should be dismissed for failure to comply with the medical malpractice presuit requirements.

### B.  Claim For Violation of Fla. Stat. §722.103/ Racketeering

Furthermore, Plaintiff has also attempted to allege that Defendants would hold patients at WEKIVA SPRINGS with healthcare coverage without medical justification or longer than

medically necessary under the guise of the Baker Act. *See Paragraph 19 of the Complaint*. Although it is not clear by the allegations contained in the Complaint whether this is being alleged to be the case for Mr.Hart, these allegations also sound in medical negligence given the nature of the specific facts as alleged by Plaintiff and the failures on the part of the health care professionals as stated above.

In the case *Paulk v. National Medical Enterprises Inc*., 679 So. 2d 1289 (Fla. 4th DCA 1996), the court held that the allegations that the Defendant/hospitals defrauded their patients by extending hospitalization, without medical necessity, so that the hospitals could exhaust available insurance coverage sounded in medical negligence and plaintiffs were required to comply with the presuit requirements set forth in Chapter 766. *Id*. at 1291. The court reasoned, "It is clear to us that Plaintiffs cannot prove their cause of action without adducing evidence as to the medical necessity of the hospital periods."

Based on the forgoing, it is clear that the claims as alleged in the Complaint sound in medical negligence, and thus, the Complaint should be dismissed for failure to comply with the presuit requirements of Chapter 766.

**VI.**     **Count II Should be Dismissed for Failure to State a Claim Pursuant to 42 U.S.C. §1983**

In Count II of the Complaint, Plaintiff has brought a claim pursuant to 42 U.S.C. 1983, Deprivation of Civil Rights, based on the alleged violation of Florida's Baker Act. *See Paragraph 47 of Complaint.* However, a Plaintiff may not maintain a Section 1983 claim based on a violation of Florida's Baker Act, as the Baker Act is not a federal constitution or law of the United States. *United States. Haely v. Judd*, 8:12-CV-89-T-17TGW, 2012 WL 3204591, at *2 (M.D. Fla. 2012); *Constantino v. Madden*, 16 Fla. L. Weekly Fed. D 321 (M.D. Fla. 2003). To prevail on a claim under 42 U.S.C. §1983, a plaintiff must prove that a person acting under color

of state law deprived the plaintiff of a right, privilege, or immunity secured by the *federal constitution or federal law. See* 42 U.S.C. § 1983. In other words, "[§ ] 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right." *Lehman v. Scott*, 2:08-CV-530, 2009 WL 1911070, at *5 (M.D. Fla. 2009)(citing to *Knight v. Jacobson,* 300 F.3d 1272, 1276 (11th Cir.2002).

Furthermore, Plaintiff has failed to allege that the Defendants were acting under the color of state law. Merely acting pursuant to a statute does not make one's conduct "under color of state law." *Foshee v. Health Mgmt. Associates*, 675 So. 2d 957, 959-60 (Fla. 5th DCA 1996). The deprivation of rights must be "fairly attributable **to the state** and it must be caused by the exercise of some right or privilege created by the state. *Id*. The party charged with the deprivation must be "a person who may fairly be said to be a state actor." *Id.* Just because one acts pursuant to, or even under the authority of a statute, does not make one a state actor under § 1983. *Id*.

Plaintiff has also failed to allege that the Defendants in this action are state actors violating a federal right of the Plaintiff. Thus, Plaintiff has failed to state a claim pursuant to violations 42 U.S.C §1983.

**VII.** **Count III Should be Dismissed for Failure to State a Claim Pursuant to Fla. Stat. 722.103, Florida Rico Act**

In Count III of the Complaint, Plaintiff alleges violations of Fla. Stat. §722.103, or the Florida RICO Act. Plaintiff generally alleges, without any sufficient particularity as to the time periods, persons, places or specific instances or violations, that Defendants have engaged in racketeering by "holding patients without medical justification or longer than medically necessary under the guise of the Baker Act". However, essential to any successful RICO claim are the basic requirements of establishing a RICO enterprise and a "pattern of racketeering

activity." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004 (holding that because the plaintiffs failed to advance facts sufficient to support a theory of either open– or closed-ended continuity, they have failed to adequately plead a pattern of racketeering activity sufficient to survive the defendants' motion to dismiss).

A RICO enterprise exists "where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." *Id.*   To successfully allege a pattern of racketeering activity under the Florida RICO Act, plaintiffs must allege that: (1) the defendants **committed two** or more predicate acts within a **five-year time span**; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a ***continuing nature***. *See Fla. Stats. §772.102(4); §772. 102 and §772. 103.* Plaintiff has failed to allege any of the three required elements.

It is well established that in order to prove a "pattern of racketeering activity" it is not sufficient to simply establish **two** isolated predicate acts. RICO targets *ongoing* criminal activity, rather than sporadic, isolated criminal acts. *Jackson*, 372 F.3d at 1264. Furthermore, the continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address—one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future. *Id.* at 1265 (11th Cir. 2004).

In explaining RICO's continuity requirement, the Supreme Court has said, "Continuity" is both a closed– and open-ended concept, *referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition....* A party alleging a RICO violation may demonstrate continuity over a closed period by proving *a series of related predicates extending over a substantial period of time....* Often a RICO action will be

brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)*(emphasis added).* In "open-ended" cases that rely on alleging the *threat* of continuity, plaintiffs can meet their burden by establishing either that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future," or that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business. *Id. (emphasis added).*

Plaintiff fails to allege with any particularity: a pattern of racketeering activity; that the Defendants committed two or more predicate acts within a 5 year time span; that the predicate acts were related to one another; and the predicate acts demonstrated criminal conduct of a *continuing* nature, either by alleging closed or open ended continuity.  Instead, Plaintiff makes legal conclusions that the following statutes were violated: Florida Statute §812.014 "("Theft"), Florida Statute §817.034 ("Florida Communications Fraud Act"), 18 U.S.C. §371 ("Conspiracy to commit offense or to defraud United States), 18 U.S.C. §1343 ("Fraud by wire, radio, or television"), 18 U.S.C. §1341 ("Fraud and Swindles") and/or 18 U.S.C. 1349 ("Attempt and conspiracy").  Plaintiff fails to give any specific factual underpinnings for such conclusions. Quite frankly, it is not even clear if Plaintiff is alleging that the incident that allegedly occurred in the Complaint involving Mr. Hart was related to this alleged "racketeering" scheme of defrauding insurance companies or in violation of any of the statutes as listed by the Plaintiff.

Therefore, Count III should be dismissed for Plaintiff's failure to allege a claim pursuant to the Florida Rico Act.

### VIII.   Plaintiff's Prayer for Relief Should be Stricken from Count III

In the prayer for relief in Count III of the Complaint, Plaintiff "reserves the right to move for leave to amend Count III to plead a claim for punitive damages pursuant to Florida Statute 768.72. *Paragraph 40 of the Complaint.* However, in section 772.104, which provides for a civil action under §772.103, subsection (3) states:

> (3) **In no event shall punitive damages be awarded under this section**. The defendant shall be entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim which was without substantial fact or legal support. In awarding attorney's fees and costs under this section, the court shall not consider the ability of the opposing party to pay such fees and costs. Nothing under this section shall be interpreted as limiting any right to recover attorney's fees or costs provided under other provisions of law. (emphasis added).

See also *McArthur Dairy, Inc. v. Original Kielbs, Inc*., 481 So.2d 535 (Fla. 3d DCA 1986)(holding that punitive damages are duplicative of trebled damages for civil theft; consequently, in such a case punitive damages are no longer permitted).

Therefore, the prayer for relief should be stricken from Count III of the Complaint.

## IX.    Plaintiff's Prayer for Attorney's Fees Should be Stricken from Count III

In Count II of the Complaint, Plaintiff requests the reward of attorney's fees in subsection (d) of the prayer for relief "pursuant to 42 U.S.C. §1981." However, 42 U.S.C. §1981 does provide that a prevailing party in a §1983 action is entitled to attorney's fees. This statute simply states that all persons have the same right to "make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." Therefore, the prayer for attorney's fees pursuant to 42 U.S.C. §1981 is erroneous and should be stricken from the Complaint.

WHEREFORE, in light of the above and forgoing, Defendants, UHS, PREMIER and WEKIVA SPRINGS, respectfully request this Court enter an Order Granting this Motion to Dismiss and Motion to Strike.

Respectfully Submitted,

   /s/ Jay Cohen
Jay Cohen, *Trial Counsel*
jcohen@jaycohenlaw.com
Florida Bar No. 292192
*Counsel for Universal Health Services, Inc., Premier Behavioral Solutions, Inc., and Wekiva Springs Center, LLC.*
100 S.E. 3rd Avenue, Suite 1100
Fort Lauderdale, FL  33394
954-449-8700 / Fax: 954-763-6093
pleadings@jaycohenlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished via E-Portal/E-Mail  on July 25, 2016 to:   Justin Seth Drach, Esq., Justin Seth Drach, PA, 5262 Commissioners Drive, Jacksonville, FL  32224, jusindrach@drachlaw.com

THE LAW OFFICE OF JAY COHEN, P.A.
*Counsel for Universal Health Services, Inc., Premier Behavioral Solutions, Inc., and TBJ Behavioral Center, LLC, and Wekiva Springs Center, LLC.*
100 S.E. 3rd Avenue, Suite 1100
Fort Lauderdale, FL  33394
954-449-8700 / Fax: 954-763-6093
pleadings@jaycohenlaw.com

By:  /s/ Jay Cohen
     Jay Cohen, Fla. Bar No. 292192

AND

By: s/ Frederick D. Page
Frederick D. Page, Esq.

21

HOLLAND & KNIGHT
*Counsel for Universal Health Services, Inc., Premier Behavioral Solutions, Inc., and Wekiva Springs, LLC.*
Fla. Bar No. 968587
50 North Laura Street, Suite 3900
Jacksonville, FL 32202
Telephone: 904-353-2000
Facsimile: 904-358-1872
fred.page@hklaw.com

EXHIBIT "A"

16-2016-CA-003590-XXXX-MA

CV-E

Filing # 42004026 E-Filed 05/26/2016 11:04:37 AM

## IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT
## IN AND FOR DUVAL COUNTY, FLORIDA

Case No.:
Division:

HENRY JEVON HART,

      Plaintiff,

vs.

UNIVERSAL HEALTH SERVICES, INC.,
PREMIER BEHAVIORAL SOLUTIONS, INC.,
WEKIVA SPRINGS CENTER, LLC,
BIH TAMBI, M.D.,
MOHAMMAD FAROOQUE, M.D.,
JOHN DOES 1-5, and
JANE DOES 1-5,

      Defendants.

_____/

### COMPLAINT

COMES NOW the Plaintiff, Henry Jevon Hart, by and through his undersigned counsel,

files this Complaint and sues Defendants, UNIVERSAL HEALTH SERVICES, INC., PREMIER

BEHAVIORAL SOLUTIONS, INC., WEKIVA SPRINGS CENTER, LLC, BIH TAMBI, M.D.,

MOHAMMAD FAROOQUE, M.D., JOHN DOES 1-5, and JANE DOES 1-5. In further support of this

cause of action, Plaintiff would state and allege as follows:

### JURISDICTION AND VENUE

1.     This is an action for damages in excess of $15,000.00, exclusive of interests, costs, and

attorney's fees.

2.     This is an action to recover damages on behalf of Henry Jevon Hart arising from

the Defendants falsely imprisoning and depriving him of Constitutional and statutory rights in

violation of 42 U.S.C. § 1983, and violation of the Florida Civil Remedies For Criminal

Practices Act, Florida Statutes § 772.103, (hereinafter "FCRCPA").

3. The Court has jurisdiction over the subject of, and the parties to this action as the Defendants do or transact business in Duval County, Florida and the events giving rise to the claim arose in Duval County, Florida.

## PARTIES

4. Plaintiff Henry Jevon Hart ("Plaintiff") is a resident of Duval County, Florida and was a patient of Wekiva Springs Center, LLC ("Wekiva") from on or about April 24, 2015 until May 1, 2015.

5. Defendant Universal Health Services, Inc. ("UHS") is a Delaware corporation with its headquarters at 367 S. Gulph Road, King of Prussia, Pennsylvania 19406. UHS subsidiaries own and operate more than 235 acute care and behavioral health facilities and surgery centers in 37 states, the District of Columbia, Puerto Rico, the U.S. Virgin Islands and the United Kingdom.

6. Defendant Premier Behavioral Solutions, Inc. ("Premier") is a Delaware corporation with its headquarters at 367 S. Gulph Road, King of Prussia, Pennsylvania 19406.

7. Wekiva is a Delaware LLC and 80-bed acute behavioral health treatment facility located at 3947 Salisbury Road, Jacksonville, Duval County, Florida. Wekiva is a receiving facility designated by the Florida Department of Children and Families pursuant to Florida Statutes § 394.461 (2015).

8. Defendants Premier and Wekiva are subsidiaries of UHS, and affiliates of each other. Unless otherwise denoted, these three defendants shall be collectively referred to as "UHS Defendants."

9. Defendant Bih Tambi, M.D. (hereinafter "Tambi") was employed by or an agent of Defendant UHS in the capacity of a physician at Wekiva.

2

10.     Defendant Mohammad Farooque, M.D. (hereinafter "Farooque") was employed by or an agent of Defendant UHS in the capacity of a physician at Wekiva.

11.     Defendants John Doe 1-5 and Jane Doe 1-5 were employees or agents of Defendant UHS.

## FACTUAL ALLEGATIONS

12.     The Florida Mental Health Act, Florida Statutes §§ 394.451-394.47891 (2015). (hereinafter the "Baker Act") allows that a person may be involuntarily examined for up to 72 hours for persons who have a mental illness, are unable or unwilling to consent to voluntary examination, and, as a result of the mental illness, pose a risk of serious bodily harm to themselves or others in the near future.

13.     Florida Statutes § 394.463(2)(f) provides for an examination period of no more than 72 hours.

14.     Florida Statutes § 394.463(2)(i) states that:

Within the 72-hour examination period . . . one of the following actions must be taken, based on the individual needs of the patient: .
    1.      The patient shall be released, unless he or she is charged with a crime. . .;
    2.      The patient shall be released, subject to the provisions of subparagraph 1., for voluntary outpatient treatment;
    3.      The patient, unless he or she is charged with a crime, shall be asked to give express and informed consent to placement as a voluntary patient. . . ; or
    4.      A petition for involuntary placement shall be filed in the circuit court when outpatient or inpatient treatment is deemed necessary.

15.     Universal Health Services, Inc. is one of the largest owners of mental health facilities in the United States.

3

16.     With few exceptions, Defendant UHS restricts admissions to Wekiva to people who qualify for reimbursement of their medical costs from private insurance or a government funded healthcare program.

17.     As part of the racketeering activity, the Defendants implemented a scheme of holding patients with healthcare coverage through private insurance or government funded healthcare programs, without medical justification or longer than medically necessary under the guise of the Baker Act. The Defendants implement a systematic census to determine when patients' benefits will expire. '

18.     As part of the racketeering activity, the Defendants maintain discharge lists of patients whose insurance have run out and encourages its behavioral health facilities to discharge these patients regardless of their condition.

19.     As part of the racketeering activity, the Defendants discharge patients that they are illegally detaining under the guise of the Baker Act, when the patient obtains legal representation, all to avoid the scrutiny of Florida's state courts.

20.     As part of the racketeering activity, the Defendants target patients that they believe cannot advocate for themselves, lack a familial support system that can advocate for them, or lack self-awareness and the propensity to scrutinize medical providers.

21.     As part of the racketeering activity, the Defendants torment patients to obtain reactions intended to provide justification for Baker Act examination and involuntary placement.

22.     As part of the racketeering activity, the Defendants falsify mental health records to manufacture justification for holding patients pursuant to the Baker Act.

23.     As part of the racketeering activity, the Defendants mislead, intimidate, and/or threaten patients into signing a document "consenting" to voluntary placement.

4

24.     On April 23, 2015, Plaintiff participated in a sleep study at the Malcom Randall VA Medical Center in Gainesville, Florida. On April 24, 2015, while returning to Jacksonville from Gainesville, Plaintiff was run off the road by an 18-wheel tractor trailer. Plaintiff had temporary feelings of road rage in response to the tractor trailer driver's careless driving as he watched the truck proceed down the highway without stopping. Plaintiff proceeded to attend an Intensive Outpatient Program at Wekiva that evening.

25.     While at the Intensive Outpatient Program, Plaintiff was made to fill out a questionnaire in which one of the questions asked "Have you thought about harming others in the last 24 hours?" Plaintiff answered affirmatively and explained to Wekiva personnel what had happened on the way back from Gainesville and that he was not a threat to himself or others.

26.     Nonetheless, at about 6:30p.m. on April 24, 2015, Plaintiff was taken into custody by Wekiva personnel and confined against his will for the purposes of involuntary examination pursuant to the Baker Act because personnel claim that Plaintiff made suicidal ideations.

27.     As part of the racketeering activity, Defendants unlawfully involuntarily confined Plaintiff for the purposes of making and submitting a false or fraudulent claim(s) to Plaintiff's insurer for reimbursement of medically unnecessary services.

28.     At the time Plaintiff arrived at Wekiva, he did not meet the criteria for involuntary placement pursuant to the Baker Act. While involuntarily confined at Wekiva, Plaintiff was under the care and treatment of Defendants Tambi and Farooque. Defendant Tambi's "examination" of Plaintiff on April 25, 2015 lasted for 5-7 minutes. Defendant Farooque's "examination" of Plaintiff on April 26, 2015 lasted for 5-7 minutes. Plaintiff was not, during the time of his involuntary confinement, dangerous to himself or others and the Defendants had no basis upon which to continue Plaintiff's involuntary confinement in Wekiva. Plaintiff had not

been charged with a crime at any time during his involuntary confinement. Following an initial examination, Plaintiff should have been released.

29. Through their employment by the UHS Defendants, Defendant Tambi, Defendant Farooque, Defendants John Doe 1-5, and Defendants Jane Doe 1-5 were acting under color of state law, to wit the Baker Act, by involuntarily confining Plaintiff in Wekiva, a designated Baker Act receiving facility.

30. On April 27, 2015, Ashley Harrold, an employee of Wekiva filed a Petition For Involuntary Placement of Plaintiff in Duval County Circuit Court case number 16-2015-MH-000602-XXXX-MA. On April 30, 2015, Plaintiff filed a Petition For Writ of Habeas Corpus in the same case.

31. At the May 1, 2015 hearing on the Petition For Involuntary Placement before the magistrate, Defendants Tambi and Farooque failed to appear. Wekiva's director and a counselor testified on behalf of Wekiva.

32. Plaintiff was involuntarily confined until 8:00p.m. on May 1, 2015, at which time he was discharged.

33. All conditions precedent to this action have occurred or have been waived.

## COUNT I

### FALSE IMPRISONMENT

34. Plaintiff realleges those allegations contained within paragraphs 1-33 above and incorporates them herein by this reference.

35. Defendants intentionally caused Plaintiff to be restrained against his will.

36. Defendants acted without legal authority in restraining Plaintiff against his will because Plaintiff did not meet the criteria for involuntary examination under the Baker Act.

6

37.     Defendants acted without legal authority in restraining Plaintiff against his will because Plaintiff did not meet the criteria for involuntary placement under the Baker Act.

38.     Plaintiff's restraint was unreasonable and unwarranted under the circumstances.

39.     Plaintiff suffered mental anguish, humiliation, and loss of income, due to his false imprisonment.

40.     Plaintiff reserves the right to move for leave to amend Count I to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Henry Jevon Hart prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish, humiliation, loss of income; and

(c) granting such other relief as the Court may deem just and proper.

## COUNT II

### DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

41.     Plaintiff realleges those allegations contained within paragraphs 1-33 and 35-39 above and incorporates them herein by this reference.

42.     42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

43.     Plaintiff had a clearly established right to liberty, to be free from unreasonable searches and seizures, and to due process.

7

44.     Defendants deprived Plaintiff of his Constitutional rights to liberty, to be free from unreasonable searches and seizures, and right to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

45.     Plaintiff was not, during the time of his involuntary confinement, dangerous to himself or others and Defendants had no legal basis upon which to continue Plaintiff's involuntary confinement.

46.     Plaintiff had not been charged with a crime at the time of his involuntary confinement, nor at any time during his involuntary confinement.

47.     Following his initial examination, Plaintiff should have been released pursuant to Florida Statutes § 392.463(2)(i)(1) because he did not meet the clinical requirements for involuntary confinement.

48.     Plaintiff suffered mental anguish, humiliation, and loss of income due to his deprivation of liberty and due process under the law.

49.     Plaintiff reserves the right to move for leave to amend Count II to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Henry Jevon Hart prays for judgment:

(a) awarding damages and cost of this action;

(b) awarding damages for mental anguish, humiliation, loss of income;

(c) awarding punitive damages in the event this action is removed to a district court of the United States;

(d) awarding litigation costs and reasonable attorney's fees pursuant to 42. U.S.C. §1981; and

(e) granting such other relief as the Court may deem just and proper.

8

## COUNT III

### VIOLATION OF THE FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT, SECTION 772.103, FLORIDA STATUTES

50.     Plaintiff realleges those allegations contained within paragraphs 1-33, and 35-39 above and incorporates them herein by this reference.

51.     As part of the racketeering activity, Defendants with criminal intent held Plaintiff illegally and for the purposes of committing fraud upon Plaintiff and his insurance provider.

52.     As part of the racketeering activity, Defendants with criminal intent participated in the scheme to defraud insurance providers of payments that they were not entitled to, and provided material support to the UHS Defendants so that they would receive money for personal use and to fraudulently maximize stockholder equity.

53.     As part of the racketeering activity, Defendants with criminal intent in violation of Florida Statute 812.014, Florida Statute 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, received proceeds derived, directly and indirectly, from their ongoing scheme to defraud insurance providers of reimbursements, both directly and indirectly, and any part of such proceeds, or the proceeds derived from the investment or use thereof, were used in the establishment or operation of the UHS Defendants' enterprise, all in violation of Florida Statute 772.103(1).

54.     As part of the racketeering activity, Defendants with criminal intent in violation of Florida Statute 812.014, Florida Statute 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, through their ongoing scheme to defraud insurance providers of reimbursements, acquired or maintained, directly or indirectly, an interest in or control of the UHS Defendants' enterprise, all in violation of Florida Statute 772.103(2).

9

55.     As part of the racketeering activity, Defendants with criminal intent in violation of Florida Statute 812.014, Florida Statute 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, maintained employment by, or associated with, the UHS Defendants to conduct or participate, directly or indirectly, in the UHS Defendants' ongoing scheme to defraud insurance providers of reimbursements, all in violation of Florida Statute 772.103(3).

56.     As part of the racketeering activity, Defendants with criminal intent in violation of Florida Statute 812.014, Florida Statute 817.034, 18 U.S.C. § 371, 18 U.S.C. § 1343, 18 U.S.C. § 1341, and/or 18 U.S.C. § 1349, conspired or endeavored to violate Florida Statute 772.103(1)-(3) as alleged above, all in violation of Florida Statute 772.103(4).

57.     Plaintiff suffered mental anguish, humiliation, and loss of income due to his deprivation of liberty, search and seizure, and deprivation of due process under the law while Defendants were violating the Florida Civil Remedies For Criminal Practices Act.

58.     Plaintiff reserves the right to move for leave to amend Count III to plead a claim for punitive damages pursuant to Florida Statute § 768.72.

WHEREFORE, Plaintiff Henry Jevon Hart prays for judgment:

(a) awarding treble damages, litigation costs, and reasonable attorney's fees pursuant to Florida Statute 772.104(1); and

(b) granting such other relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

**THOELE DRACH**

BY:

Justin Seth Drach, Esq.
Florida Bar No. 103016
Email: justindrach@drachlaw.com
Amanda Marie Thoele, Esq.
Florida Bar No. 75118
Email: amandathoele@drachlaw.com
Justin Seth Drach, P.A.
5262 Commissioners Drive
Jacksonville, FL 32224
Telephone: (904) 600-4384
Facsimile: (904) 306-1355
*Attorneys for Plaintiff*

11

# EXHIBIT "B"



THE LAW OFFICE OF
# JAY COHEN, P.A.
### TRIAL LAWYERS

June 21, 2016

**CERTIFIED MAIL No. 70142120000431840694**
**RETURN RECEIPT REQUESTED**
Justin Seth Drach, Esq.
5262 Commissioners Drive
Jacksonville, FL 32224

Re:   Settles v. River Point Behavioral Health, et al.
Byrd v. River Point Behavioral Health, et al.
Sharp v. River Point Behavioral Health, et al.
Hembrock v. River Point Behavioral Health, et al.
Hart v. River Point Behavioral Health, et al.

Dear Justin:

This letter confirms the agreement we reached yesterday evening concerning the extension of time to file responsive pleadings in these matters. As previously mentioned, our firm represents Universal Health Services, Inc., Premier Behavioral Solutions, Inc., TPJ Behavioral Center, LLC, Roxanne Charboneau, Riverpoint Behavioral Health and Wekiva Springs, LLC. To date, only Premiere Behavioral Solutions, TPJ Behavioral Center, River Point Behavioral and Wekiva Springs have been served and you are still in the process of serving Universal Health Services and Roxanne Charboneau in the above listed cases. Per our conversation, you have agreed to extend the deadline to file the responsive pleadings on behalf of *all* of these Defendants until the time you are able to effectuate service on both Universal Health Services and Roxanne Charboneau. Once both Universal Health Services and Roxanne Charboneau are served, the above listed Defendants will have ten days from the time the last Defendant is served to respond to the complaints.

This letter also confirms that our agreement in no way limits or waives any of the grounds upon which Defendant's may move to dismiss the Complaint including but not limited to improper or insufficient service, improper venue, failure to state a claim for which relief may be granted, etc., and does not limit or waive any defenses including affirmative defenses.

As I also told you during our conversation, Universal Health Services, Inc., is a holding company and as such, does not have any employees at the facilities, nor does it manage the facilities. Universal Health Services of Delaware, Inc., is the managing company, often times

employing the facility administrator. There may be an opportunity to agree to substitute one for the other and I will let you know once I check with my client.

Thank you for taking the time to discuss these issues yesterday, and I look forward to working with you.

Very truly yours,

Jay Cohen, Esq.